# SUPREME JUDICIAL COURT

FOR THE

COUNTY OF NORFOLK, NOVEMBER TERM 1853, A'I
DEDHAM.

PRESENT:

HON. LEMUEL SHAW, CHIEF JUSTICE.
HON. CHARLES A. DEWEY,
HON. GEORGE T. BIGELOW,
HON. BENJAMIN F. THOMAS, } JUSTICES.
HON. PLINY MERRICK,

## HENRY WOOD *vs.* THE INHABITANTS OF QUINCY.

In a petition for a jury to assess damages caused by laying out a town way, if the
sheriff is interested, a coroner may preside although he is also a deputy sheriff.

The verdict of a sheriff's jury, assessing damages for laying out a town way, will
not be set aside, because more than a year had elapsed after the refusal of the
selectmen to lay out the road before the commissioners located the same, nor
because the petition for the jury was more than a year after the laying out by the
commissioners. Such objections should be taken before the commissioners on
the application for a jury, or by a *certiorari* to set aside their proceedings.

An article in the warrant for a town meeting, "to choose a committee, or to hear
and act upon the report of any committee the town may think proper, when
assembled," does not authorize the choice of a committee to discontinue a por-
tion of a town way, and set off the land to a private individual.

A fence fronting on a highway for more than twenty years is not to be deemed

and taken to be the true boundary thereof under Rev. Sts. *c.* 24, § 61, if the original boundary can be made certain by ancient monuments, although the same are not now in existence.

THIS was a petition, dated May 30th, 1850, for a jury to assess damages sustained by Henry Wood, of Quincy, from the alteration of a town way in said town, called School street. The warrant issued thereon, September 27th, 1851, by the county commissioners of Norfolk, was directed: " To any coroner of the county of Norfolk, the sheriff of said county being the owner of real estate in Quincy, in said county, and interested." This warrant was served, and the proceedings conducted by J. N. E. Mann, Esq. a coroner of said county, and also a deputy under Thomas Adams, the sheriff of the county, and for this cause the respondents objected to the competency of said Mann, to preside over the jury, but the objection was overruled.

It appeared that Edward Brackett and others, on the 8th June, 1848, presented a petition to the selectmen of Quincy, praying for an alteration in said School street, which being refused, they applied to the county commissioners for the same object at their meeting on the fourth Tuesday of June, 1848. Upon this petition the road was staked out, October 13, 1848, and the location was finally established and recorded by the county commissioners at their June term, 1849, at which time they first made the estimate of damages to the land-owners; and the respondents objected that such location was illegal, being more than one year from the refusal of the selectmen to lay out the same. The meeting of the commissioners, at which the above location was made, was on the 26th June, 1849, and the present petition for a jury to assess the damages to the petitioner therefor, was presented June 25th, 1850, and the respondents contended that the petition was not presented within a year from the location, as required by Rev. Sts. *c.* 24, § 76.

The petitioner claimed title to a part of the land taken for widening said School street, by virtue of certain proceedings of the town of Quincy in the year 1812, and not by any deeds or documentary title, and on this point it appeared that on

the 13th day of February, 1812, the selectmen of Quincy called a town meeting to be held on the second day of March ensuing, among other things, " to choose any committee, or hear and act on the report of any committee the town may think proper when assembled." At the town meeting it was voted, " that the selectmen be authorized and requested to ex‑ amine some land of Henry Wood, which he proposed making an exchange with the town, by straightening a line of fence on the road leading from Deacon Veazie's mill towards his house, &c. and report to the town at the adjournment of this meeting respecting the same." At the adjournment of said meeting, April 6th, 1812, the town adopted the report of the selectmen giving said Wood a portion of a road then of unnecessary width, in exchange for other land of said Wood required to widen the road from Deacon Veazie's mill. This land so given to said Wood was a portion of that for which he now claimed damages, by the widening of School street, as before stated. The respondents objected that this exchange of land was not valid, as the warrant calling the town meeting of March 2d, 1812, contained no article upon the subject. The petitioner relied solely upon that article in the warrant before stated.

The petitioner claimed title in part of the land taken, by right of possession, and the erection for more than twenty years of a fence upon the land fronting upon and against the highway, where said way was widened.

The respondents admitted that said fence had been erected more than twenty, but less than forty years, and contended that the original boundary of said highway on said School street was an ancient stone wall and fence existing at the time said fence was erected by the petitioner, and remaining in part afterwards ; and they offered evidence to show that the petitioner's fence on said highway had not been erected forty years when said town way was widened or laid out by the commissioners, but less than thirty years ; and that the original boundary of said town way, where the petitioner's said fence was erected, was known, and could now be made certain. There was no record of the original laying out of said town

way. The respondents requested the presiding officer to instruct the jury that "if the former boundaries or lines of the road or highway before the alleged exchange or erection of the fence, are made certain, and if the jury find that the old stone wall, before· the alleged exchange or erection of said fence by the petitioner, was the original boundary and line of the road or highway, so as to be made certain, then they are to give no damages to the plaintiff for that part of the land which was included in the highway under the old boundary. And the jury to be directed to find specially whether such boundaries on the road before the alleged exchange or fence erection are established."

To sustain this request, the respondents relied upon the evidence offered as before stated, and contended that upon the evidence in the case, it appeared that the petitioner had no other title to that part of the land on the south side of said School street, claimed by vote of the town and by possession, than what he could claim by such vote and possession, and by the erection of the said fence on the highway, and that the former boundaries of the old road and highway before 1812, (and before the petitioner erected his said fence on said highway taking in the said part of said old road and highway for which he now claimed·damages,) were made certain by the evidence so as to include the land now taken as part of the said old town way.

The presiding officer ruled against all the objections and positions taken by the respondents, and a verdict for the petitioner was returned into the court of common pleas, which the presiding judge of that court ordered to be set aside, and the petitioner appealed to this court. The case was argued at the November term, 1852.

*J. J. Clarke,* for the petitioner, to the last two questions involved, made the following points:

1. Another point made by the respondents is, that the petitioner has not a valid title to a part of the land for which he claims damage, because the vote of the town, in 1812, was not justified by any article in the warrant calling the town meeting.

By *St.* 1785, *c.* 75, § 5, it is provided that the subject-matter acted upon, so as to have any legal operation, must be inserted in the warrant for calling the town meeting. And this is reënacted in Rev. Sts. *c.* 15, § 21.

The object of a warrant is to give previous notice to the inhabitants, of the subjects to be acted on, and if this is substantially done, it is sufficient. In *Torrey* v. *Millbury*, 21 Pick. 64, the warrant was, " To see if the town will make an appropriation towards purchasing a fire-engine." The vote was, " To raise and appropriate $400 for the purchasing of a fire-engine and necessary apparatus, &c." The court were of opinion, that under this warrant the town were authorized to pass the vote they did. And as to the sufficiency of the article in the warrant to justify the vote passed in the present case, see *Blackburn* v. *Inhabitants of Walpole*, 9 Pick. 97; *Avery* v. *Stewart*, 1 Cush. 502; *Williams* v. *School District in Lunenburg*, 21 Pick. 81. In another case the article in the warrant was to choose " such district officers as the law requires," and to " transact such other business as may be legal and proper," and it was objected that there was no article in the warrant for the meeting, at which the district voted to instruct the committee to commence actions, authorizing such a vote; and it was pressed that the commencement of actions involved an expenditure of money.

So, under an article in the warrant " to choose all such town officers as the law directs," it was held that " the town may lawfully pass a vote authorizing the several school districts to choose their prudential committees." *Kingsbury* v. *School District in Quincy*, 12 Met. 99. And the cases of *Craigie* v. *Mellen*, 6 Mass. 17. and *Haven* v. *City of Lowell*, 5 Met. 35, do not conflict with our view, but tend to corroborate it.

But the town have no right to say that the exchange of lands made by that vote, passed so long ago, and ever since acquiesced in and treated by both parties for so many years as binding between them, has no validity. It should not be disturbed from the length of time that has elapsed.

That part of the petitioner's land taken by the town for a

road, in exchange for that which was enclosed within his fence, that was formerly used as a highway by the town, has been *de facto* a part of the town way ever since; worked upon, and treated in all cases as a part of the highway. Can the town now say that the petitioner has no claim to the land by him enclosed, without even offering to reexchange?

The South Shore Railroad Company were not permitted to avail themselves in defence to a claim of damages for injuring a mill-pond, that the petitioner had no right to have a pond, he not having complied with the terms of a statute granting him such a right, on certain conditions, which had never been complied with. *White* v. *South Shore Railroad Co.*, Norfolk, 1852, and see *Parker* v. *The Boston and Maine Railroad*, 3 Cush. 117. Besides; the town, under the laying out, and order of the commissioners, have constructed the road as directed, and have retained land given by the petitioner in exchange, which would not be embraced in the recent location. The ruling of the presiding officer, that the vote of the town, taken in connection with the use and occupation by the town, for so long a period of time, is consistent with the principles of justice between the parties, and will be sustained, unless there is some principle of law, or statute provision, that forbids it. It is said that the vote of the town did not operate as a discontinuance of the former way. We reply that if that exchange took effect, it did operate as a discontinuance. Establishing an alteration in a way is, in law, a discontinuance of the part altered. *Commonwealth* v. *Westborough*, 3 Mass 406; *Commonwealth* v. *Cambridge*, 17 Mass. 158.

2. By statute, the petitioner is entitled to the land within his fence bounding on the highway, unless the boundaries of the road are known or can be made certain. Rev. Sts. *c.* 24, § 61. But this knowledge, or certainty of the boundaries, must be derived from records or monuments. *Plumer* v. *Brown*, 8 Met. 578.

The respondents do not pretend that they can make the boundaries certain by records or monuments, and, in fact, did not offer any evidence that tended to make the boundaries of the former way certain. And the respondents do not ask for a

ruling that would bring them within this statute, and, therefore, the ruling asked for was rightly refused.

The petitioner has also held this land adversely and continuously twenty years. But a possessory title to land, over which a highway is located, is sufficient to entitle the party in possession, who is aggrieved by the doings of the commissioners, to have a jury to determine the matter of his complaint. *State Lunatic Hospital* v. *County of Worcester*, 1 Met. 437; *Plumer* v. *Brown*, 8 Met. 578.

*B. F. Hallett*, for the respondents.

DEWEY, J.* 1. The objection taken to coroner Mann, as the presiding officer at the hearing before the jury, because he also held the office of deputy sheriff under Thomas Adams, the sheriff of Norfolk, who was interested in the case as an owner of taxable real estate in Quincy, furnishes no reason for setting aside the verdict. The warrant was directed to " any coroner of the county of Norfolk." That office was duly held by Mr. Mann under an appointment from the governor and council. It was a distinct office from that of deputy sheriff; and he was not disqualified from acting as coroner by holding also the office of deputy sheriff. *Colby* v. *Dillingham*, 7 Mass. 475.

2. It is next objected to the acceptance of this verdict that the road, for the laying out of which damages are claimed, was illegally laid out by the county commissioners, because more than one year had elapsed after the selectmen had refused to lay out the same, before the same was laid out by the county commissioners. The petition upon which the appeal was taken to the county commissioners was presented to the selectmen June 8th, 1848, and in the same month the petitioner appealed to the county commissioners at their meeting on the fourth Tuesday of June, 1848, although the final action of the county commissioners did not take place until June term, 1849. We apprehend that all that is required by the statute, of the party in such a case, is to make the

---

* BIGELOW, J. did not sit in this case.

proper application within a year to the county commissioners, and that the pendency of the case before them, though protracted more than one year from the time of the refusal of the selectmen, does not vitiate the proceedings. But objections to the proceedings in the location by the county commissioners, do not properly arise here. The objection, if it exist in fact, should have been taken before the commissioners on the hearing of the petition for a jury, or their order set aside on *certiorari.*

3. A further objection taken to this verdict is, that the petition for a jury was not presented to the county commissioners within one year after the laying out of the road, as required by the Rev. Sts. *c.* 24, § 76. The limit of one year by the statute has reference to the time of making the final order laying out the road, being the act which is ordered to be recorded as the location thereof.* For the purposes of this application for a jury, the laying out of this road was June 26th, 1849, and the petition for a jury was presented June 25th, 1850, and so within the year. But, as was remarked in reference to the preceding objection, this matter was one proper to be raised before the commissioners. If they improperly proceeded to order the jury, an application might be made for a *certiorari* or other proper process to vacate that order.

4. The next inquiry is, whether the petitioner has established a sufficient title to the land, for the taking of which he claims damages. As to a part of this land, it seems that prior to March 2d, 1812, the same was a part of an existing town way and being such, the petitioner could recover no damages unless some change has occurred in relation to his interest in the same. The petitioner alleges that this portion of the road embraced in his present claim was by force of certain proceedings in the town of Quincy at a meeting holden on March 2d, 1812, and by adjournment on the 6th April, 1812, discontinued as a highway, and the same was transferred to him to be held in his own right. The doings of the town, and the articles and

---

* See *St.* 1849, c. 200.

warrant, are fully set forth in the report of the case. The article and warrant relied upon on the part of the petitioner, were in these words, " to choose any committee, or hear or act on the report of any committee the town may think proper." The doings of the town show the purpose to have been to alter the line of an existing road by giving up a portion of the road already in existence, and annexing a certain other parcel, not a part of the road, to the then existing road. We think the article in the warrant was not specific enough to authorize this, if it were competent, upon a proper warrant, to have made an alteration of this character.

5. The remaining question is, that arising upon the claim set up by the petitioner under section 61 of the Rev. Sts. c. 24, providing that where buildings and fences have been erected and continued for more than twenty years fronting upon any highway or private way, and the boundaries thereof are not known, or cannot be made certain by the records or any monuments, such buildings and fences shall be deemed and taken to be the true boundary of said way. As to this part of the case, the respondents requested the presiding officer to instruct the jury that " if the former boundaries or lines of the road or highway, before the alleged exchange, or erection of the fence, are made certain, and if the jury find that the old stone wall, before the alleged exchange or erection of said fence by the petitioner, was the original boundary and line of the road or highway, so as to be made certain, then they are to give no damages to the petitioner for that part of the land which was included in the highway under the old boundary."

The petitioner, in reference to this point, contends that nothing but records or present existing monuments can be relied upon to avoid the effect of a fence erected and continued for more than twenty years upon and against any highway, being deemed the true boundary of such highway. This, we think, is too limited a view of the nature of the evidence that may be offered to control the presumption arising from the erection and continuance of such fence. It is true that nothing less than certainty as to the boundaries of the highway is to prevail against it. But if there was an ancient

stone wall and fence existing at the time the later fence, now relied upon as a boundary, was built, and a portion of such ancient wall remained many years after the later fence was built, and it could be shown by any competent evidence that the line of the old stone wall was to a certainty the true boundary of the highway, it would be competent for the defendants thus to control the effect of the later built fence. But this is only to be allowed under the condition prescribed by the statute, that of the boundaries being made certain by such proof. If there is any degree of uncertainty in the matter, and the original boundary of the highway " is not known," to use the language of the statute, then such fence is to be taken to be the true boundary. We think the instructions to the jury adverse to these views were erroneous, and that instructions to the effect we have above stated should have been given.

*Verdict set aside.*

